UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:08-CR-0128-T-23EAJ

JAMES BLACK
_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant's **Motion to Suppress Evidence** (Dkt. 48) and the United States' **Response in Opposition** (Dkt. 50). An evidentiary hearing and oral argument have been held. For the reasons stated herein, I recommend that the motion to suppress be denied.

### Findings of Fact

The following facts are established by a preponderance of credible evidence:

1. On November 12, 2007, at approximately 11:54 p.m., Plant City Police Department Officer Paul Tester ("Tester") stopped a yellow Honda sedan for traveling with improper brake lights. Defendant was driving the sedan and Bonnie Smith ("Smith") was riding in the passenger seat. The sedan pulled over into a well-lit 7-11 parking lot and parked in a spot in front of the store.

2. Tester approached the vehicle and asked for Defendant's drivers license and registration. Instead of a drivers license, Defendant produced a Florida identification card. Smith, however, provided a drivers license to Tester.

3. Through his patrol car computer, Tester learned that Defendant had a suspended drivers license and that Smith owned the Honda and had a valid drivers license. Through a radio dispatcher, Tester learned that Defendant was a "habitual violent felony offender."

4. Within minutes, Tester was joined by Officer Bard ("Bard") and Sgt. Williams ("Williams") with the Plant City Police Department.

5. At approximately 12:11 a.m., Tester returned to the Honda and directed Defendant to exit the vehicle. Defendant opened the door, exited the vehicle, and left the door open. Tester then arrested Defendant for knowingly driving with a suspended license, patted him down, handcuffed him, and placed him in the back of Tester's patrol car.

6. While Defendant was arrested and taken to Tester's patrol car, Smith remained in the passenger seat of the Honda. Smith appeared to be impaired or emotionally troubled and stated that she was upset because her son had just passed away.

7. After placing Defendant in his patrol car and completing some paperwork, Tester returned to the Honda. Bard and Williams were standing on the passenger side of the vehicle. Tester approached the driver's side of the vehicle, looked through the still-open driver's side door from outside the vehicle, and saw two bullets in plain view on the driver's seat.

8. At Tester's direction, Smith exited the vehicle. At some point Smith's purse was searched, however, she was not patted down.

9. Tester then searched the interior of the vehicle and located a handgun beneath the driver's seat. Tester's subjective intent was to search the vehicle incident to Defendant's arrest.[1]

10. Tester returned to the patrol car and asked Defendant about the handgun. Defendant responded that the handgun belonged to him and that he had taken the bullets out of his pocket.

---

[1] Tester's Criminal Report Affidavit indicates that he "conducted a search of the 1992 Honda incident to arrest" (Defendant's Ex. 1).

11. Tester told Smith she was free to depart in the Honda but that she could not drive the vehicle due to her impaired state.

12. In an Incident Offense Report (Defendant's Ex. 2), Tester indicated that he took the following actions after placing Defendant under arrest:

> - Conducted a search of the car
> - Observed two bullets on the driver's seat[2]
> - Observed a black handgun under the driver's seat in a black holster
> . . .
> - Conducted a Criminal History check on Black.

## Conclusions of Law

Defendant contends that Tester's search of the vehicle was unlawful pursuant to the Supreme Court's recent decision in United States v. Gant, 129 S. Ct. 1710 (2009) (Dkt. 48 at 2-3). The Government responds that the search was not unlawful under Gant because 1) officer safety was at issue and 2) Tester had probable cause to believe that Defendant had committed a crime under federal law (Dkt. 50 at 2-3).

In Gant, the defendant was arrested for driving with a suspended license, handcuffed, and secured in the back of a patrol car. 129 S. Ct at 1715. Afterwards, two police officers searched the defendant's car without a warrant and discovered a gun and a bag of cocaine. Id. The trial court found the police lacked probable cause for the search but nonetheless held the officers had conducted a valid search incident to an arrest. Id.

On appeal, however, the Arizona Supreme Court held that the search was not a proper search

---

[2] Defendant argues that, read chronologically, these bullet points indicate that Tester "[c]onducted a search of the car" before he "[o]bserved two bullets on the driver's seat" (Defendant's Ex. 2). Based on Tester's testimony, which the court finds credible, it is clear that Tester observed the bullets resting on the driver's seat in plain view before entering the vehicle.

3

incident to an arrest because any legitimate concerns for officer safety or preservation of evidence faded once the defendant was secured in the patrol car. Id. at 1714. The Supreme Court agreed, reasoning that "[a] rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals." Id. at 1720. Accordingly, the Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Id. at 1723.

The instant case is similar to Gant insofar as Defendant was arrested for a traffic infraction and secured in a patrol car prior to the search of his vehicle. This case is distinguishable from Gant, however, because the search at issue there was clearly incident to an arrest.[3] Here, before searching the vehicle, Tester knew that Defendant was a convicted felon and observed the bullets in the driver's seat in plain view from outside the vehicle. These facts constituted probable cause to believe that Defendant had violated Florida law[4] and independently justified Tester's search of the

---

[3] Both Defendant and the Government agree that, pursuant to pre-Gant precedent, Tester was probably authorized to search the vehicle incident to Defendant's arrest for driving with a suspended license. Defendant contends that because Tester intended to conduct a search incident to an arrest, the search must be analyzed under that doctrine. This argument overlooks that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996). "[T]he fact that [an] officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Id. (citation and internal quotation marks omitted).

[4] At the time Tester searched Defendant's vehicle, it was illegal under Florida law for a convicted felon to possess a firearm or ammunition. See Fla. Stat. § 790.23 (2004).

4

vehicle. See United States v. Ross, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Thus, whether or not the search was permissible under the search-incident-to-arrest doctrine, it was lawful under the probable cause exception to the Fourth Amendment warrant requirement. See Gant, 129 S. Ct. at 1721 (noting probable cause can justify a vehicle search "for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader"); see e.g. United States v. Kellam, 568 F.3d 125, 136 n.15 (4th Cir. 2009) (distinguishing Gant because smell of marijuana in automobile provided probable cause for search); United States v. Martinez-Cortes, 566 F.3d 767, 771 n.3 (8th Cir. 2009) (noting that officers had limited authority to conduct search of vehicle incident to arrest but that "probable cause to believe that contraband or other evidence ... would be found in the stopped vehicle ... was an independent basis for conducting a warrantless search of the vehicle") (emphasis added); United States v. Manjate, Nos. 07-1652, 07-1711, 2009 WL 1391425, at *2 n.2 (6th Cir. May 15, 2009) (unpublished) (noting Gant had no bearing on case because warrantless search of automobile "was, irrespective of [the defendant's arrest], justified by probable cause").

Accordingly, the court rejects Defendant's argument that the ammunition and firearm were illegally seized. To do otherwise would conflict with the Supreme Court's express recognition in Gant that even where a vehicle search is not permissible incident to an arrest, probable cause of criminal activity within a vehicle "authorizes a search of any area of the vehicle in which the evidence might be found." Gant, 129 S. Ct. at 1721 (citing Ross, 456 U.S. at 820-21).

## Conclusion

Although Defendant was arrested for driving with a suspended license, Tester's search of

5

Defendant's vehicle was not merely a search incident to an arrest. Rather, the search was predicated on probable cause that Defendant was a felon unlawfully in possession of ammunition and had committed that offense within the vehicle. Accordingly, Tester's seizure of the ammunition and handgun did not violate Defendant's Fourth Amendment rights.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)  Defendant's Motion to Suppress Evidence (Dkt. 48) be **DENIED**.

**Date: July 7, 2009**

ELIZABETH A JENKINS
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

**Any party objecting to the report and recommendation shall file a copy of the transcript.**

Copies to:
Counsel of Record
District Judge